UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
  :
JOSE ANTONIO LLUILEMA GARCIA, *individually and* :
*on behalf of other similarly situated*, :
  :
                         Plaintiff, :      20 Civ. 4323 (JPC)
  :
    -v- : OPINION & ORDER
  :
  :
FRANCIS GENERAL CONSTRUCTION INC. *et al.*, :
  :
                         Defendants. :
  :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      On January 20, 2022, the Court held a hearing on its order to show cause for why it should not enter a default judgment against Defendants Francis General Construction Inc. and Francisco Peralta ("Defendants").[1] For the reasons stated on the record at the hearing, the Court granted Plaintiff Jose Antonio Lluilema Garcia's motion for default judgment on liability but deferred ruling on Garcia's request for damages, attorneys' fees, and costs. A month later, the Court held an evidentiary inquest hearing on Garcia's requested damages, at which Garcia testified. *See* Dkt. 105 ("2/22/22 Inquest Hr'g Tr."). Garcia then supplemented his request for damages, attorneys' fees, and costs with further submissions. *See* Dkts. 107 ("4/6/22 Troy Decl."), 108 ("4/6/22 Garcia Affidavit"), 109 ("4/6/22 Supp. Memo"), 115 ("6/28/22 Garcia Affidavit"), 118 ("7/3/22 Supp. Memo"), 119 ("7/3/22 Troy Decl."). For the reasons below, the Court awards Garcia $81,156.67

---

[1] Two other individuals, Antonia Pichisaca and Alex Peralta, were originally named as Defendants. On December 14, 2020, the Court entered the voluntary dismissal of the claims against Pichisaca and Alex Peralta. Dkt. 22. When referring to "Defendants" in this Opinion and Order, the Court is referring to Francis General Construction and Francisco Peralta.

in unpaid overtime wages, $81,156.67 in liquidated damages, pre-judgment interest on unpaid overtime wages to be calculated by the Clerk's Office, $5,000 in paystub violation damages, $5,000 in time-of-hire violation damages, $9,881.40 in attorneys' fees, $296.20 in costs, and post-judgment interest.

## I.  Background

### A.  Underlying Facts[2]

Having already found Defendants liable at the January 20, 2022 default judgment hearing, the Court will only briefly discuss the relevant facts.  Garcia worked for Francis General Construction from around 2007 to September 9, 2019.  Dkt. 89 ("12/22/21 Troy Decl."), Exh. 12 ("12/22/21 Garcia Affidavit") ¶ 3.  During that time, Francisco Peralta—who owned Francis General Construction—was Garcia's boss.  12/22/21 Garcia Affidavit ¶ 4.

Garcia worked long hours at Francis General Construction.  For half of the year—during what he called the "warm months"—Garcia worked seven days a week from "six in the morning" until "nine in the evening" with a half-hour lunch break.  2/22/22 Inquest Hr'g Tr. 10:9-11, 13:8-10; 4/6/22 Garcia Affidavit ¶ 7; 4/6/22 Troy Decl. ¶¶ 7, 12.  For the other half of the year—that is, the "cold months"—Garcia worked six days a week from 8:00 a.m. until a varying time around "five, six[,] or 7:00 p.m." with a half-hour lunch break.  2/22/22 Inquest Hr'g Tr. 13:8-10, 29:12-25; 4/6/22 Garcia Affidavit ¶ 8; 4/6/22 Troy Decl. ¶¶ 9, 12.  Throughout the year, on average about once a month, Garcia would not work when it "rained or snowed" and there was no interior

---

[2] Given the Court's prior finding of default and liability as to Defendants, the Court accepts as true Garcia's well-pleaded allegations.  The Court also accepts as true the uncontested sworn and reasonable sworn statements from Garcia in support of his damages request.

2

work.  2/22/22 Inquest Hr'g Tr. 25:20-23, 28:5-6; 4/6/22 Garcia Affidavit ¶¶ 4-6; 4/6/22 Troy Decl. ¶¶ 13-14.[3]

Defendants paid Garcia a flat daily rate during his employment.  When Garcia began working for Francis General Construction in 2007, he made $120 per day.  12/22/21 Garcia Affidavit ¶ 9.  Then around 2012, he received a raise to $180 per day.  *Id.* ¶ 10.  Garcia was typically paid in cash, except for once when he received a $900 check signed by Francisco Peralta to cover one week's worth of work.  *Id.* ¶¶ 11-12.  And when Garcia was paid, he never received a pay stub.  *Id.* ¶ 15.[4]

Eight or nine people worked with Garcia during his time at Francis General Construction.  6/28/22 Garcia Affidavit ¶ 2; 2/22/22 Inquest Hr'g Tr. 26:15-17.  He would begin each day at Francisco Peralta's house in Queens to help load tools into a Francis General Construction truck.  2/22/22 Tr. 11:16-23.  Garcia and the other employees would then head to the job site, which was almost always in New York City.  6/28/22 Garcia Affidavit ¶ 5; 2/22/22 Inquest Hr'g Tr. 11:12-18.

---

[3] In his most recent affidavit, Garcia states that he worked "six (6) days" per week "during the warm months" and "five (5) days" per week" "during the winter months," but that affidavit is not entirely clear as to whether it is referring to every week of the month or only those weeks when conditions prevented him from working.  *See* 4/6/22 Garcia Affidavit ¶¶ 5, 7-8 (Once a month Defendants would "cancel work . . . when it rained or snowed and there was no interior work to be completed. . . .  During 'Warm Months' that meant I worked six (6) days rather than seven (7) days a week. . . .  During "Winter Months" that meant I worked five (5) days rather than six (6) days a week.").  But in prior sworn statements, Garcia consistently said that he worked seven days per week during the "warm months" and six days per week during the "cold months."  *See, e.g.*, 2/22/22 Inquest Hr'g Tr. 12:12-13:6; 12/21/22 Garcia Affidavit ¶ 7.  The Court therefore credits Garcia with working seven days a week during the "warm months" and six days per week during the "cold months," with the exception of one day every four weeks when conditions and workload prevented him from working.

[4] Although Garcia was typically paid in full for his work, Garcia alleged in the First Amended Complaint that Defendants failed to pay him for the last two weeks that he worked.  *See* Dkt. 61 ("FAC") ¶ 30.  Garcia has not, however, provided any evidence—whether through his inquest hearing testimony or any of his affidavits—that Defendants failed to pay him for those weeks.

But on three or four occasions, Garcia performed work on houses on Long Island. 6/28/22 Garcia Affidavit ¶ 7; 2/22/22 Inquest Hr'g Tr. 11:12-18.

**B.     Procedural History**

Garcia brought this putative class action on June 6, 2020. Dkt. 1.[5] Almost a year later, on May 27, 2021, after Defendants did not appear, the Court held a hearing on Garcia's motion for a default judgment, Dkt. 39, and his motion for attorneys' fees and costs, Dkt. 42. At that hearing, Francisco Peralta appeared *pro se*. Because of Francisco Peralta's appearance, the Court adjourned the default judgment hearing and ordered the parties to confer about the litigation. Dkt. 57. Since then, Francisco Peralta has not appeared again, and Garcia's counsel has been unable to contact him. *See, e.g.*, Dkt. 59; Dkt. 99 ("7/19/21 Hr'g Tr.") at 5:20-7:11; 2/22/22 Inquest Hr'g Tr. at 7:4-7.

Later that summer, on August 2, 2021, Garcia filed his First Amended Complaint. Dkt. 61 ("FAC"). In it, he brought seven causes of action: (1) violating the Fair Labor Standards Act ("FLSA") by failing to pay minimum wage, (2) violating the New York Labor Law ("NYLL") by failing to pay minimum wage, (3) violating the FLSA by failing to pay overtime wages, (4) violating the NYLL by failing to pay overtime wages, (5) violating the NYLL by failing to pay spread of time, (6) violating the NYLL by failing to provide wage notice at the time of hire, and (7) violating the NYLL by failing to provide wage statements.

Defendants were served with the First Amended Complaint on August 26, 2021, making their answer due by September 16, 2021. Dkts. 63-64. Neither Defendant has responded to the First Amended Complaint. Nor has either Defendant appeared since the May 27, 2021 default

---

[5] This case was originally assigned to the Honorable Paul A. Engelmayer. On September 29, 2020, the case was reassigned to the undersigned.

judgment hearing. On December 22, 2021, Garcia again moved for a default judgment, Dkt. 88, and sought attorneys' fees and costs, Dkt. 91. On January 20, 2022, the Court held another default judgment hearing. There, the Court found both Defendants liable on all causes of action in the First Amended Complaint, and reserved judgment on damages, attorneys' fees, and costs.

On February 22, 2022, the Court held an evidentiary inquest hearing on Garcia's requested damages, at which Garcia testified about the hours he worked for Defendants. *See* 2/22/22 Inquest Hr'g Tr. After the inquest hearing, Garcia supplemented his damages request by filing further submissions in support of his motion for damages, pre-judgment interest, attorneys' fees, costs, and post-judgment interest. *See* 4/6/22 Troy Decl.; 4/6/22 Garcia Affidavit; 4/6/22 Supp. Memo; 6/28/22 Garcia Affidavit; 7/3/22 Supp. Memo; 7/3/22 Troy Declaration. Garcia now seeks $211,910.33 in total damages: $81,328.40 in compensatory damages, $81,328.40 in liquidated damages, $5,000 in paystub violation damages, $5,000 in time-of-hire violation damages, $37,267.68 in pre-judgment interest, and post-judgment interest. *See* 7/3/22 Supp. Memo at 9; 7/3/22 Troy Decl., Exh. 1 ("Damages Calculations").[6] Garcia also seeks $32,449.50 in fees and $296.20 in costs. Dkt. 92 ("12/22/21 Troy Decl.") ¶ 58.

## II. Legal Standards

Once a plaintiff has established liability in a default judgment motion, a court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "[W]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not

---

[6] Garcia's July 3, 2022 supplemental memorandum mistakenly claims that Garcia seeks $80,995.82 in both compensatory and liquidated damages. *See* 7/3/22 Supp. Memo at 9. But the Damages Calculations and total damages sought reflect that Garcia actually seeks $81,328.40 in both compensatory and liquidated damages. *See* Damages Calculations; 7/3/22 Supp. Memo at 9.

5

considered an admission of damages." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quotations omitted). Instead, the plaintiff "bears the burden of . . . substantiat[ing] his claim with evidence to prove the extent of damages." *Dunn v. Advanced Credit Recovery Inc.*, No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012), *report and recommendation adopted*, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012). To meet this burden, the plaintiff must submit admissible evidence. *See House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) ("[D]amages must be based on admissible evidence."). A court may find that a plaintiff has met this evidentiary burden "either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Metro Found. Contractors Inc.*, 699 F.3d at 234.

### III. Damages

**A.  Unpaid Wages and Overtime Damages**

The Court begins with Garcia's request for $78,328.40 in unpaid overtime wages and $3,000.00 in unpaid wages. 7/3/22 Supp. Memo at 7, 9. Although Defendants' failure to pay Garcia paid overtime wages violated both the FLSA and the NYLL, Garcia only seeks damages under the NYLL. *See Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) ("Although plaintiffs are entitled to recover . . . overtime pay under both the FLSA and the Labor Law, they may not recover twice."). Because this case was initiated on June 6, 2020, Garcia can seek damages under the NYLL for unpaid overtime going back to June 6, 2014. *See* N.Y. Lab. Law § 663(3) (establishing a six-year statute of limitations).

Both the FLSA and the NYLL require employers to "pay a wage premium of one-and-one-half times the regular rate for hours worked in excess of forty per week." *Shanfa Li v. Chinatown*

*Take-Out Inc.*, 812 F. App'x 49, 52 (2d Cir. 2009); *see* 29 U.S.C. § 206; N.Y. Lab. Law § 652; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.  While the FLSA and the NYLL both require employers to pay this wage premium, they sometimes use different methods for calculating the "regular rate." *Shanfa Li*, 812 F. App'x at 52.  Under the FLSA, the regular rate is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945); *see* 29 C.F.R § 778.108.  How to turn an employee's pay rate into an hourly rate depends on how the employer paid the employee.  When, as here, an employee is only "paid a flat sum for a day's work . . . , without regard to the number of hours worked in the day[,] . . . his regular rate is determined by totaling all the sums received at such day rates . . . in the workweek and dividing by the total hours actually worked."  29 C.F.R. § 778.112.

To calculate the regular rate for the NYLL, courts must look to "regulations promulgated by New York Department of Labor ('NYDOL')" because the NYLL does not have specific "provisions governing overtime compensation." *Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 252 (S.D.N.Y. 2013) (quotations omitted).  The determination of the regular rate depends in part on the industry that a person works in.  Certain industries, such as hospitality, have specific sections covering how to calculate the regular rate.  *See, e.g.*, 12 N.Y.C.R.R. § 146-3.5(b) (detailing for the hospitality industry how to calculate the regular rate).  Other industries, such as construction, do not have specific sections and instead fall under the regulations' catch-all "miscellaneous industries and occupations" requirements.  *See* N.Y.C.R.R. § 142-2.16.  The regular rate for these unenumerated industries is "the amount that the employee is regularly paid for each hour of work." *Id.*  "When an employee is paid on a piece work basis, salary, or any basis

other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." *Id.*

So when, as here, an employee in the construction industry is paid a flat rate each day, a court calculates the regular rate the same way under the NYLL as it would under the FLSA—by dividing the total weekly earnings by the total hours worked. *See, e.g.*, *Chen v. JP Standard Constr. Corp.*, No. 14 Civ. 1086 (MKB), 2016 WL 2909966, at *10 (E.D.N.Y. Mar. 18, 2016) (determining regular rate of pay to a construction worker by totaling day rate for one week and dividing that pay by the total number of hours worked per week), *report and recommendation adopted*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016); *Yin v. Kim*, No. 07 Civ. 1236 (DLI) (JO), 2008 WL 906736, at *6 (E.D.N.Y. Apr. 1, 2008) (same). Courts will use this calculated regular rate to determine overtime owed, unless the regular rate falls below the minimum wage. When that happens, "the regular rate for purposes of calculating overtime is the relevant minimum wage." *Martinez v. Dannys Athens Diner Inc.*, No. 16 Civ. 7468 (RJS), 2017 WL 6335908, at *4 (S.D.N.Y. Dec. 5, 2017); *see also Peralta v. M&O Iron Works, Inc.*, No. 12 Civ. 3179 (ARR), 2014 WL 988835, at *7 (E.D.N.Y. March 12, 2014) (same).

Thus, to calculate overtime damages under the NYLL, the Court must first determine Garcia's regular rate by examining the hours that Garcia worked and the wages that he earned. Under New York law, "where an employer fails 'to keep adequate records . . . the employer in violation shall bear the burden of proving that the complaining worker was paid wages, benefits and wage supplements.'" *Pest v. Bridal Works of N.Y., Inc.*, 268 F. Supp. 3d 413, 423 (E.D.N.Y. 2017) (quoting N.Y. Lab. Law §§ 196-a, 195(4)). The NYLL "does not permit an employer to discharge this burden by undermining the reasonableness of an employee's evidence that he was underpaid. . . . An employer must demonstrate that it in fact paid its employees 'wages, benefits,

8

and supplements.'" *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (quoting N.Y. Lab. Law § 196-a(a)). When a defendant defaults, a "plaintiff's recollection and estimates of hours worked are presumed to be correct." *Piedra v. Ecua Rest., Inc.*, No. 17 Civ. 3316 (PKC) (CLP), 2018 WL 1136039, at *12 (E.D.N.Y. Jan. 31, 2018) (quotations omitted), *report and recommendation adopted*, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018). Courts apply the same presumption "to a plaintiff's recollection of wages earned." *Id.*

In this case, Defendants defaulted and did not produce time records. Nor does it appear that they ever kept time records. *See* 12/22/21 Troy Decl., Exh. 14 ¶ 5. By contrast, Garcia—through his testimony at the February 22, 2022 inquest hearing and his sworn affidavits—provided detailed and credible accounts of the standard hours that he worked and the amounts that he was paid. The Court therefore credits Garcia's account of the hours that he worked during the relevant time and his wages for those hours. *See Piedra*, 2018 WL 1136039, at *12 (crediting the plaintiff's evidence for the hours he worked and his earned wages because "defendants have not appeared in this action to challenge plaintiff's claims"). Thus, the Court finds that for half of the year, during the "warm months," Garcia worked seven days a week from "six in the morning" until "nine in the evening" with a half-hour lunch break. 2/22/22 Inquest Hr'g Tr. 10:9-11, 13:8-10; 4/6/22 Garcia Affidavit ¶ 7; 4/6/22 Troy Decl. ¶¶ 7, 12. Once a month, Garcia would not work when "it rained" and there was no interior work to do. 2/22/22 Inquest Hr'g Tr. 25:20-23, 28:5-6; 4/6/22 Garcia Affidavit ¶¶ 4-6; 4/6/22 Troy Decl. ¶¶ 13-14. For the other half of the year, during the "cold months," Garcia would work six days a week from 8:00 a.m. until a varying time around "five, six[,] or 7:00 p.m." with a half-hour lunch break. 2/22/22 Inquest Hr'g Tr. 13:8-10, 29:12-25; 4/6/22 Garcia Affidavit ¶ 8; 4/6/22 Troy Decl. ¶¶ 9, 12. And just like the warm months, once a month Garcia would stay home when it "rained or snowed" and there was no interior work.

2/22/22 Inquest Hr'g Tr. 25:20-23, 26:9-12, 28:5-6; 4/6/22 Garcia Affidavit ¶¶ 4-6; 4/6/22 Troy Decl. ¶¶ 13-14. Throughout the relevant time, Garcia was paid a flat rate of $180 per day. 12/22/21 Garcia Affidavit ¶¶ 10-12.

Based on these hours and the corresponding regular rate, the Court finds that Garcia is entitled to $81,156.67 in overtime wages under the NYLL. Exhibit A, attached to this Opinion, shows this calculation.[7]

## B.    Liquidated Damages

Next, Garcia seeks liquidated damages under the NYLL equaling 100% of the unpaid wages. *See* 7/3/22 Supp. Memo at 9; Damages Calculations. The NYLL allows for liquidated damages awards equaling one hundred percent of the wages due, "with an exception for good faith." *Galvez v. 800 Ginza Sushi Inc.*, No. 19 Civ. 8549 (JPC), 2022 WL 748286, at *18 (S.D.N.Y. Mar. 11, 2022); *see* N.Y. Lab. Law §§ 198(1-a), 663(1). Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith." *Zubair v. EnTech Eng'g P.C.*, 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012). Because Defendants have defaulted, they have not met their burden to rebut this presumption. *See Lopez v. Emerald Staffing, Inc.*, No. 18 Civ. 2788

---

[7] The Court declines to award Garcia $3,000 in unpaid wages for the last two weeks that he worked. "A default judgment entered on well-pleaded allegations does not reach the issue of damages, and Plaintiffs must therefore substantiate their claim for damages with evidence to prove the extent of those damages." *Broach v. Metro. Exposition Servs., Inc.*, No. 20 Civ. 0165 (LJL), 2020 WL 3892509, at *4 (S.D.N.Y. July 10, 2020) (cleaned up). Yet Garcia has provided no evidence that he was not paid the typical $180 in cash for those two weeks. Indeed, Garcia only cites the First Amended Complaint for this alleged unpaid wage shortfall. *See* 7/3/22 Supp. Memo at 7. Still, the Court ultimately awards nearly all the sought compensatory damages because Garcia undercalculated his overtime wage damages by mistakenly averaging his regular rate across the entire year instead of week. *Compare* Damages Calculation (seeking $81,328.40 in compensatory damages: $78,328.40 in unpaid overtime and $3,000 in unpaid wages), *with* Exhibit A (granting $81,156.67 in compensatory damages based only on unpaid overtime). Moreover, because Garcia no longer seeks minimum wage or spread-of-hour damages, *see* 7/3/22 Supp. Memo at 9, Damages Calculations, the Court does not consider awarding those damages.

(SLC), 2020 WL 915821, at *11 (S.D.N.Y. Feb. 26, 2020) ("Having defaulted, Defendants have not carried their burden of demonstrating good faith under the NYLL."). Garcia is thus entitled to $81,156.67 in liquidated damages—100% of his unpaid overtime wages.

## C. Pre-Judgment Interest

The Court now turns to Garcia's request for pre-judgment interest for his unpaid minimum wages and overtime wages. Under New York law, courts may award pre-judgment interest and liquidated damages. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999). But when a plaintiff has already received FLSA liquidated damages, that plaintiff is entitled to "prejudgment interest only on unpaid wages and spread of hours pay for which liquidated damages pursuant to the FLSA [are] not assessed." *Angamarca v. Pita Grill 7 Inc.*, No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *9 (S.D.N.Y. Aug. 2, 2012).

Here, the Court has not assessed FLSA liquidated damages on the unpaid minimum wages and overtime wages. It instead only has assessed liquidated damages under the NYLL. Garcia therefore has a right to pre-judgment interest at New York's statutory rate of nine percent per year. *See* N.Y. C.P.L.R. §§ 5001(b), 5004(a); *Tackie v. Keff Enterprises LLC*, No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014) ("[P]laintiffs are entitled to prejudgment interest on any compensatory damages awarded under the NYLL for which there is no corresponding award of liquidated damages under FLSA."). That pre-judgment interest only applies to the compensatory damages for the unpaid wages; it excludes liquidated damages. *See Angamarca*, 2012 WL 3578781, at *9. When unpaid wages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). "Simple pre-judgment interest is calculated by multiplying the principal by the interest rate by the time period—from a

11

singular, midpoint date—up until and including the date judgment is entered." *Angamarca*, 2012 WL 3578781, at *9. The Court will therefore calculate Garcia's pre-judgment interest on $81,156.67 (*i.e.*, the unpaid overtime he is owed) as of January 15, 2017, which is the approximate midpoint date of the period of his employment at Francis General Construction for which he is owed those damages.

D.     **Written Notice and Wage Statement Damages**

Garcia next seeks $5,000 in penalties for Defendants' failure to provide the required wage notice and $5,000 for their failure to provide the required wage statements. 7/3/22 Supp. Memo at 9; Damages Calculations. Under New York law, an employee who does not receive a wage notice—a document detailing the employee's pay rate and allowance—within ten business days of their start of employment "may recover . . . damages of fifty dollars each work day that the violations occurred . . . but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." N.Y. Lab. Law § 198(1-b). Similarly, under New York law, an employee who fails to receive a proper wage statement (known as a paystub) "shall recover . . . damages of two hundred fifty dollars for each workday that the violations occurred . . . but not to exceed a total of five thousand dollars[.]" N.Y. Lab. Law § 198(1-d). Given that Defendants never provided Garcia these required documents during his employment, *see* 12/22/21 Garcia Affidavit ¶¶ 9-15, Garcia is entitled to $5,000 in penalties for Defendants failing to provide the required wage notice and $5,000 for failing to provide the required wage statements.

E.     **Post-Judgment Interest**

Lastly, Garcia has a right to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). This statutory language requires the Court to grant post-

12

judgment interest. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 53 (E.D.N.Y. 2015) ("The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." (quotations omitted)). Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a). The Court therefore grants post-judgment interest at the statutory rate.

### IV. Attorneys' Fees and Costs

Lastly, the Court turns to Garcia's request for attorneys' fees and costs. "Under both the FLSA and the NYLL, prevailing plaintiffs are entitled to an award of reasonable attorneys' fees and costs." *Silva v. Legend Upper W. LLC*, No. 16 Civ. 3552 (PGG), 2021 WL 4197360, at *12 (S.D.N.Y. Sept. 14, 2021); *see* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). In support of his application, Garcia's counsel submitted a statement of fees showing the date on which the services were performed, the time expended, and a description of the services completed. *See* Dkt. 92 ("12/22/21 Troy Decl.") ¶ 56. This statement verifies Garcia's request for attorneys' fees. *See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160-61 (2d Cir. 1994).

In determining what a "reasonable fee" is, courts consider "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008). To do so, courts consider factors

like "the complexity and difficulty of the case," "the resources required to prosecute the case effectively," "the timing demands of the case," and "whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself." *Id.* The rate must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

In the wage-and-hour context, "courts generally award experienced . . . attorneys between $300 and $400 per hour." *Rodpracha v. Pongsri Thai Rest. Corp.*, No. 14 Civ. 2451 (DF), 2021 WL 6205861, at *2 (S.D.N.Y. Dec. 29, 2021) (quotations omitted). "[A]s for associates, rates in excess of $225.00 per hour are reserved for FLSA litigators with more than three years' experience, while associates with one to three years of experience have been awarded rates ranging from $150 to $200 per hour." *Singh v. Meadow Hill Mobile Inc.*, No. 20 Civ. 3853 (CS) (AEK), 2021 WL 4312673, at *16 (S.D.N.Y. Aug. 9, 2021), *report and recommendation adopted*, 2021 WL 3862665 (S.D.N.Y. Aug. 29, 2021).

Troy Law is seeking fees on behalf of John Troy, Aaron Schweitzer, Tiffany Troy, Maggie Huang, and Preethi Kilaru. 12/22/21 Troy Decl. ¶ 56. John Troy is a principal at Troy Law, who graduated Dickinson School of Law in 1985. *Id.* ¶ 6. As of the time of his December 22, 2021 declaration, Mr. Troy was attorney of record for at least 168 wage-and-hour cases in this District, 166 wage-and-hour cases in the Eastern District of New York, and forty wage-and-hour cases in other Districts, as well as other matters in state court or arbitration. *Id.* ¶¶ 10-14. Aaron Schweitzer is a managing associate who graduated Fordham University School of Law in 2016 and joined Troy Law in April 2017 as a clerk. *Id.* ¶¶ 22, 24. As of the time of Mr. Troy's declaration, Mr.

14

Schweitzer had litigated over 188 wage-and-hour actions in federal court. *Id.* ¶¶ 25, 30-33. Tiffany Troy is an associate who appears to have graduated Fordham School of Law in 2021. *See id.* ¶¶ 38, 44. Maggie Huang is a CPA, and Preethi Kilaru is a "Managing Clerk" who has an LLM from SMU School of Law. *Id.* ¶¶ 48, 53. John Troy requests an hourly rate of $600, Aaron Schweitzer an hourly rate of $400, Tiffany Troy an hourly rate of $200, Maggie Huang an hourly rate of $150, and Preethi Kilaru an hourly rate of $200. *Id.* ¶ 56.

The Court finds these requested fees excessive. A treatise worth of case law has emerged about the rates and hours that Troy Law has requested. And courts have balked at the sort of rates requested in this case. Courts have "thoroughly scrutinized" such requested rates and found them "unreasonable" given the firm's skill and experience. *Lu Wan v. YWL USA Inc.*, No. 18 Civ. 10334 (CS), 2021 WL 1905036, at *6 (S.D.N.Y. May 12, 2021).[8] When other courts in this District were presented with similar or even lower hourly rates than those requested here, they found "that these individuals are not entitled to compensation at the hourly rates they proposed." *Jia Wang Lin v. Ginza 685 Inc.*, No. 18 Civ. 12202 (AJN), 2021 WL 2138511, at *2 (S.D.N.Y. May 26, 2021) (cleaned up); *see, e.g.*, *De Los Santos v. Hat Trick Pizza, Inc.*, No. 16 Civ. 6274 (AJN), 2021 WL

---

[8] *See, e.g.*, *Rodpracha*, 2021 WL 6205861, at *3 (explaining that courts have repeatedly reduced John Troy's rate "in light of the consistently poor quality of his work and the fact that he often performed work that could have been performed by more junior attorneys, or even by paralegals"); *Yuajian Lin v. La Vie En Schezuan Rest. Corp*, No. 15 Civ. 9507 (DF), 2020 WL 1819941, at *3 (S.D.N.Y. Apr. 9, 2020) (explaining that courts have reduced the firm's rates because of "a lack of skill and/or professionalism"); *Shanfa Li*, 2019 WL 3715086, at *6 (reducing John Troy's rate because his "conduct during trial was lacking," he "repeatedly interrupted the Court, was disrespectful, and struggled to pose clear questions"), *aff'd,* 812 F. App'x 49 (2d Cir. 2020); *Hui Luo v. L & S Acupuncture, P.C.*, No. 14 Civ. 1003 (BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015) (noting that the court could not justify a rate for John Troy in excess of $300 per hour, when, among other things, "[t]he trial was very rough in terms of demonstrating Mr. Troy's ability to formulate questions according to the rules of evidence").

4150967, at *2 (S.D.N.Y. Sept. 13, 2021); *Lin*, 2020 WL 1819941, at *3-7; *Jia Wang Lin*, 2021 WL 2138511, at *2.

The Court agrees with the many other courts in this District to have reduced Troy Law's requested rates. This is particularly the case given counsel's performance in this case. Troy Law repeatedly submitted memoranda and affidavits with discrepancies and errors. *See, e.g.*, 7/19/21 Hr'g Tr. at 7:19-22 (explaining that the Court "discussed with Mr. Schweitzer several discrepancies between the complaint and the default judgment papers"); *id.* at 8:3-6 (explaining that the Court "discussed with Mr. Schweitzer some errors in the brief in support of the default judgment where the brief was inconsistent with the plaintiff's affidavit in which Mr. Schweitzer explained they were scrivener's errors, essentially typos in the brief"); 7/3/22 Supp. Memo at 9 (discrepancies for total compensatory damages sought); Dkt. 112 (ordering Troy Law to supplement the filings because it failed to include necessary information to calculate damages). The billing log also includes John Troy and Aaron Schweitzer billing for tasks that a paralegal or junior attorney could perform. *See* 12/22/21 Troy Decl., Exh. 1 at 1-2 (John Troy and Aaron Schweitzer billing for scanning, reviewing documents for accuracy, and filing ECF proof of service). The Court therefore reduces the proposed hourly rates to $300 per hour for John Troy, $150 per hour for Aaron Schweitzer, $150 per hour for Tiffany Troy, $100 per hour for Maggie Huang, and $70 per hour for Preethi Kilaru. *See, e.g.*, *Lin*, 2020 WL 1819941, at *3-6 (identifying $300-400 as a reasonable hourly rate for John Troy, $100-$150 as a reasonable hourly rate for Aaron Schweitzer, $100 as a reasonable hourly rate for Maggie Huang, and $70 as a reasonable hourly rate for Preethi Kilaru); *Shanfa Li v. Chinatown Take-Out Inc.*, No. 16 Civ. 7787 (JCM), 2019 WL 3715086, at *7 (S.D.N.Y. Aug. 7, 2019) (reducing John Troy's hourly rate to $300,

Aaron Schweitzer's hourly rate to $150, and Maggie Huang's hourly rate to $100), *aff'd*, 812 F. App'x 49 (2d Cir. 2020).[9]

The Court next turns to the requested hours. The Court finds that the billed hours are excessive as well. Counsel took over this case after the original complaint was filed. It has filed routine default judgment papers and an amended complaint. And as mentioned, some of the work was duplicative and error-ridden. In fact, the Court originally rejected the default judgment papers because of counsel's errors. *See* 7/19/21 Hr'g Tr. at 8. In reviewing the detailed timesheet, *see* Dkt. 91-1, the Court finds reducing the hours by one-third is warranted. Applying the hourly rates above and the reduced hours, the Court finds that the following attorneys' fees are reasonable:

| **Individual** | **Hourly Rate** | **Hours** | **Total Fees** |
|---|---|---|---|
| John Troy | $300 | 27.89 | $8,366.00 |
| Aaron Schweitzer | $150 | 5.77 | $865.00 |
| Tiffany Troy | $150 | 1.61 | $242.00 |
| Maggie Huang | $100 | 2.13 | $213.33 |
| Preethi Kilaru | $70 | 2.79 | $195.07 |
| | | **Total Awarded Attorneys' Fees** | $9,881.40 |

The Court next turns to costs. Under the FLSA and NYLL, Garcia "may be reimbursed for the reasonable costs of this action pursuant to both the FLSA and NYLL." *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198, 663(1). An award of costs "normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged feepaying

---

[9] The undersigned recently awarded an hourly rate of $400 for Mr. Troy in *Zhang v. Hiro Sushi*, No. 17 Civ. 7066 (JPC), 2022 WL 2668263, at *16 (S.D.N.Y. July 11, 2022). This was in line with the recent determination of the Honorable Alison J. Nathan as to Mr. Troy, *see De Los Santos v. Hat Trick Pizza, Inc.*, No. 16 Civ. 6274 (AJN), 2021 WL 4150967, at *2 (S.D.N.Y. Sept. 13, 2021); *Lin v. Ginza 685 Inc.*, No. 18 Civ. 12202 (AJN), 2021 WL 2138511, at *2 (S.D.N.Y. May 26, 2021). Given the many errors and discrepancies in the filings made in this case, the Court does not believe that $400 is an appropriate hourly rate for the senior partner assigned to this case and therefore adjusts Mr. Troy's hourly rate accordingly.

clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). "Courts, in their discretion, have awarded reasonable costs for various expenses, including computer research, attorney transportation and meals, mailing and copying fees and service and filing fees." *Collado v. Donnycarney Rest. L.L.C.*, No. 14 Civ. 3899 (GBD) (HBP), 2015 WL 4737917, at *14 (S.D.N.Y. Aug. 10, 2015) (collecting cases).

Here, Garcia's counsel seeks $296.20 in reimbursement for court filing fees and expenses incurred for filing, research, postage, process servers, and printing. 12/22/21 Troy Decl. ¶ 57; Dkt. 91-1 at 4. The Court finds these costs reasonable.

## V. Conclusion

For the reasons discussed above, the Court awards Garcia damages from Defendants Francis General Construction Inc. and Francisco Peralta, as well as attorneys' fees and costs. The Clerk of the Court is respectfully directed to calculate pre-judgment interest at the statutory rate of 9% a year of the damages for unpaid overtime in the amount of $81,156.67 from January 15, 2017 to the date of judgment. The Clerk of the Court is further directed to enter judgment in favor of Garcia against Defendants Francis General Construction Inc. and Francisco Peralta as follows: $81,156.67 in overtime wages, $81,156.67 in liquidated damages, pre-judgment interest on $81,156.67 that is calculated from January 15, 2017 to the date judgment is entered, $5,000 in paystub violation damages, $5,000 in time-of-hire violation damages, an award of $9,881.40 in attorneys' fees, $296.20 in costs, and post-judgment interest. The Clerk of the Court is also respectfully directed to close any pending motions and to close this case.

SO ORDERED.

Dated: July 12, 2022  
       New York, New York                                 JOHN P. CRONAN  
                                                             United States District Judge

# Exhibit A

|  | Hours Worked Per Day | Days Worked Per Week | Hours Worked Per Week | Salary Each Day | Weekly Comp. |
|---|---|---|---|---|---|
| Cold Months | 9.5 | 5.77 | 54.81 | 180 | 1038.46 |
| Warm Months | 14.5 | 6.77 | 98.15 | 180 | 1218.46 |

**Warm Months = April 1 through September 30**
**Cold Months = October 1 through March 31**

[   ] **Warm Months**
[   ] **Cold Months**

**Days Worked Per Week = Average Days worked, taking into account inclement weather days**
**Regular Rate = The Greater of Weekly Comp / Hours Worked and Min Wage**
**Weekly Damages = (Overtime Rate − Regular Rate) * Overtime Hours**
**Damages = Weekly Damages * Weeks in Time Period**

| Time Period | | N.Y. Min Wage | Regular Rate | Overtime Rate | Overtime Hours | Weekly Damages | Damages |
|---|---|---|---|---|---|---|---|
| 6/6/14 | 9/30/14 | $8.00 | $18.95 | $28.43 | 58.15 | $551.01 | $9,130.98 |
| 10/1/14 | 12/30/14 | $8.00 | $12.41 | $18.62 | 14.81 | $91.88 | $1,181.34 |
| 12/31/14 | 4/30/15 | $8.75 | $12.41 | $18.62 | 14.81 | $91.88 | $1,575.12 |
| 5/1/15 | 9/30/15 | $8.75 | $18.95 | $28.43 | 58.15 | $551.01 | $11,964.74 |
| 10/1/15 | 12/30/15 | $8.75 | $12.41 | $18.62 | 14.81 | $91.88 | $1,181.34 |
| 12/31/15 | 4/30/16 | $9.00 | $12.41 | $18.62 | 14.81 | $91.88 | $1,588.24 |
| 5/1/16 | 9/30/16 | $9.00 | $18.95 | $28.43 | 58.15 | $551.01 | $11,964.74 |
| 10/1/16 | 12/30/16 | $9.00 | $12.41 | $18.62 | 14.81 | $91.88 | $1,181.34 |
| 12/31/16 | 4/30/17 | $10.50 | $12.41 | $18.62 | 14.81 | $91.88 | $1,575.12 |
| 5/1/17 | 9/30/17 | $10.50 | $18.95 | $28.43 | 58.15 | $551.01 | $11,964.74 |
| 10/1/17 | 12/30/17 | $10.50 | $12.41 | $18.62 | 14.81 | $91.88 | $1,181.34 |
| 12/31/17 | 4/30/18 | $12.00 | $12.41 | $18.62 | 14.81 | $91.88 | $1,575.12 |
| 5/1/18 | 9/30/18 | $12.00 | $18.95 | $28.43 | 58.15 | $551.01 | $11,964.74 |
| 10/1/18 | 12/30/18 | $12.00 | $12.41 | $18.62 | 14.81 | $91.88 | $1,181.34 |
| 12/31/18 | 4/30/19 | $13.50 | $13.50 | $20.25 | 14.81 | $99.95 | $1,713.46 |
| 5/1/19 | 8/26/19 | $13.50 | $18.95 | $28.43 | 58.15 | $551.01 | $9,209.70 |
| 8/27/19 | 9/9/19 | $13.50 | $18.95 | $28.43 | 58.15 | $551.01 | $1,023.30 |

| | |
|---|---|
| **Total Damages** | $81,156.67 |
| **Liquidated Damages** | $81,156.67 |